The next case for argument is 17-1137 Irwin v. Army. We're ready whenever you are, sir. Okay, thank you, Your Honor. They've pleased the court, Charles Brower, appearing on behalf of the petitioner appellant Ilya Irwin in this case. We're here because of a split decision by the Merit Systems Protection Board. We obviously agree with the separate opinion of Chairman Grundman in that case, that the Army cannot prove that it has evidence to support its termination of Mr. Irwin. Well, a lot of the grounds for Chairman Grundman's separate analysis was she focused on the lack of candor in the determination letter. It seems like there's no dispute, however, between the parties in this case that the agency isn't necessarily, for purposes of arguing clear and convincing evidence, to dismiss your client. The lack of candor is the only thing they can point to. I don't think you've disputed that, right? Well, we are disputing that. Our position is that the CPAC 25 that was given on December 11th discussed all of the negative aspects of what the supervisor deemed to be inappropriate actions by Mr. Irwin. But when the letter of termination was issued, after presumably all of those allegations were considered, the specific reason given for termination was lack of candor. That's the only reason given, referencing to what he told Captain Healy on September 17th, 2013, that he did not have access to CHCS. And my understanding of what Chairman Grundman said was that you have to go with what was charged in the letter with regard to the termination. Of course, he was a probationary employee, right? He was a probationary employee and actually terminated on his last day of employment before his one-year anniversary. So all you have is the whistleblower argument. We have a whistleblower argument. And the AJ found that he would have been removed anyway, aside from a protected disclosure. Yes, but our position is that the AJ did not consider all the facts. One of the most significant facts, and what I argued strenuously to the AJ, was the November 12th, 2013, evaluation, which is in the appendix, page 070. And that was given after all these supposed misconducts of Mr. Irwin took place. And in that evaluation, the two people who eventually participated in his termination did not bring up any of these acts that they say justified his termination. They gave him a good report. They said it was fair. They gave him excellent ratings with regard to medication, safety. There was no description of anything prior to November 12th of 2013. And all of the acts which they included in that CPAP 25 in December 11th took place prior to that evaluation. So it makes no sense whatsoever that he would be terminated for things prior to his evaluation, which was satisfactory. And then later, they say he was terminated because of things that happened before that. It makes no sense. Is it clear and convincing? It's not clear and convincing. Why wouldn't they put in the evaluation all of the things that they say he eventually got terminated for? Can I ask you for a little more detail? And I guess you're left generally with the credibility determinations of the AJ. And in this case, he really, on some of these points, he really credited the other side. But I'm a little confused about what was really happening with the approval of his use of, what's it, CHCS? CHCS. Yeah. Because the charge itself in the discussion is about some September 17th date. But it appears that what was really going on was that even subsequent to that date, through November, your client appears to have not accessed the system and been using the system as the agency contends it thought he should have been doing. So is that right? Are we looking at that period between September and November for when he was not re-accessing the system, having been told to do so? Yeah. November 17th, he had this discussion with Captain Healy. And she wrote the email on September 18th. And then he had his meeting with Major Larrilla on September 18th. And it was discussed about him not having access to it. And we had also brought up the point that initially, when he first started to work there, he didn't have access because he didn't have his, he was not- Was there a lack of clarity as to whether or not the agency expected and wanted him to have access to the system? Well, there's a requirement that they have access. But initially, for two months, he didn't have access, not of his own doing. They didn't even provide him with access. And his position was that he only really needed to use the CIS system. Yeah. But his position was rejected. And let's start from there. He doesn't get to decide whether or not he should have access and be using the system. The agency gets to tell him to use it. And at some point, at least, you agree that they told him to use it. Yes. And that was, in your view, September 17th? It was September 18th. Okay. So what happened in the six weeks after that, through November? When, if at all, did he get access and actually access the system and start using it in his day-to-day duties? Well, the AJ Fountain made a finding that it was sometime in November, November 13th, I think it was. So why did it... I mean, so the agency is concerned, and that's what one of the bases was, was it not, that they said that he should... He was clearly on notice. He should have accessed and used the system. And he didn't for at least six weeks after the September 17th kerfuffle. Okay. Well, but our position is that if that was really an issue with them, if they really had a problem with that, then it should have been included in his evaluation in November. They didn't mention anything about that. They didn't mention any real negative things that he was doing with regard to his performance. So our position is, if they really actually were concerned about that, first of all, they would have had him connected for those two months at the beginning of his employment. And they would have mentioned that in the CPAC 20 strike down, in the evaluation given to him by the two people that made the decision and supposedly had this great concern about the CHCS. So that's our position, that there's really no clear and convincing evidence that they would have taken the step to remove him. Because on the CPAC 25, it has other things they can do. You know, they can suspend him. They can demote his pay grade. And the last thing they can do is terminate him. So in our view, the evidence really doesn't show by clear and convincing evidence that they would have terminated him because of that issue about CHCS or any other things that he did. That's our position. Thank you. All right. Well, we serve your rebuttal. Thank you. May it please the court, the board's decision should be affirmed because substantial evidence supports the board's determination that the Army proved by clear and convincing evidence that it would have removed Mr. Irwin during his probationary period for his misconduct, regardless of any protected disclosures. So the two points your friend made this morning, and that's encompassed in this case, are really, so I'd like you to address them. One is the point made by Chairman Grundeman in her dissent, which was that it seems like the charging letter, the termination letter, relied solely on the lack of candor. And that's at minimum an underdeveloped term with respect to what we know to be the facts in this case. And the other point your friend raises is that there was this intervening performance appraisal. And if this issue of his access to the system was the be all and end all of his being terminated, why was that not referenced in that appraisal letter? So why don't you address those two, if you wouldn't mind. Yes, Your Honor. And we would note that, and I believe that Mr. Irwin has acknowledged this as well, there's no authority on point for a probationary employee in whistleblower action as to what the agency may rely on. So Chairman Grundeman stated that the agency should have been limited to relying on lack of candor because that was the misconduct identified in the removal letter. But there's nothing that precludes the agency from relying on all of Mr. Irwin's misconduct. And in cases of probationary employees- Let me ask you, is the government's position that that is different than would be the case for a career conditional or another permanent employee in terms of the removal? That in that case, does the government agree that the agency would be constrained by the specification in the termination letter? As a starting point, I think the constraint for a tenured employee would also concern due process concerns. There have been instances where the deciding official has taken into account misconduct that was not included in the notice of termination, but where the employee had a chance to respond to that information. For one instance, in one instance, the employee actually affirmatively brought it up himself in a notice of removal in response to a notice of suspension. That was the Kearney's case. Then the court has found that there has been no due process violation. But here, there is a probationary employee. Probationary employees don't have the same rights to notice and response. And again, there was no improper procedure followed here. But when the agency was in the position of- But doesn't it seem kind of prohibitive? I mean, irrespective of whether there's a due process problem, any of that, or even a requirement that they can't go beyond the four corners of the termination letter. Isn't it kind of probative that that wasn't the basis, there wasn't clear and convincing evidence for the agency to take that action if all they relied on was something that's, you know, I think we can all agree is arguably insufficient to satisfy the requirements? Well, as Mr. Irwin's counsel pointed out, all of the misconduct that the agency ultimately relied on at the hearing was discussed in the request for adverse action. And so it wasn't that the agency was- Yeah, but they make a big deal. They kind of use that against you because they point out, do they not, that the request for adverse action was rejected. And so that should cut the other way. An initial CPAC was rejected.  When he was on call and- So that was rejected. But ultimately, that was one of the factors that the AJ relied on to establish- The AWOL charge itself was rejected because there was an error by a timekeeper who recorded the time as leave without pay rather than AWOL. And so the initial CPAC described the charge as AWOL. And when they looked at it internally and saw the timekeeper mistake, they no longer referred to that as AWOL. However, they did continue in the subsequent CPAC to mention his failure to report for duty when called. I don't think that Mr. Irwin gets the benefit of the timekeeper's error to make that misconduct suddenly be proper conduct. What about the fact that the appraisal that was done with him during this period didn't reference any of this other stuff? Well, initially, we would point out that there was a counseling session with Mr. Irwin immediately regarding CHCS access as soon as his supervisor, Colonel Luria, was notified that he lacked access. We don't dispute that the evaluation doesn't bring up these issues again. However, whether or not it was- This is really, again, a notice argument. And whether or not Mr. Irwin was on notice of his misconduct is really irrelevant to whether or not the agency proved that such misconduct was the reason for his removal. And the board- It's not just a notice requirement, right? It's not just a notice issue, right? It's a question that's the agency's burden to establish by clearing convincing evidence they would have taken this action anyway. So all of these fact arrows, at least, point, do they not, to the fact there was not clear and convincing evidence? Because you'd assume if there's a real problem with an employee with regard to access to the system, that would be reflected in the performance appraisal of that individual for that period of time. Again, Mr. Irwin was counseled on this, and the agency did take it very seriously. As Your Honor noted to Mr. Irwin's counsel, the lack of access continued beyond the September 18th counseling for two months. During that time, there was a very serious patient safety event that occurred because of Mr. Irwin's lack of access to CHCS. He was unable to admit a patient to the ICU through CHCS, which caused an undue delay in the patient receiving medication. I think that the evaluation- mention of this misconduct in the evaluation, but the agency did prove by clear and convincing evidence that each of these categories of misconduct occurred. And the lack of candor, while we recognize that the AJA did not use that term, he did clearly discuss that there was both a known requirement that Mr. Irwin maintain access to CHCS and report any loss to his direct supervisor if there was a loss of access, and that he failed to do so. The administrative judge also found that- So that's the lack of candor that he- Yes, he had an obligation to report if he lost access to a system, and his failure to report was a lack of candor. And was this failure to report as of September 17th, because that's the time frame in the termination letter, or was it what the AJA, I thought, was talking about, which is really focusing on the six-week or eight-week period following the September 17th? No, I believe that the period following is the continued failure to maintain access, which the AJA also found to be misconduct. But the lack of candor relates to the known obligation, and this was something that was included in what's called an initial counseling document that lays out the position descriptions. It was something that Mr. Irwin himself submitted to the board. That document says that if you were required to maintain access to CHCS, and if you lose access, you are required to report that to your direct supervisor. Now, your friend referred to something, and I don't recall it in the record, which is that his client could not access the system for a two-month period early on. Is that correct? There is reference in the record to when Mr. Irwin's account became active, which I believe was in, I think, May. And there wasn't any view by the agency that that itself was misconduct, but that once his account became active, at that point, he had a duty to maintain access. The position description, the initial counseling document, also talks about how important it is to regularly log in, because the system will kick you out, and you will lose access if you haven't logged in for 30 days. And this is a system that is used for many critical events. It's used for electronically moving, transferring, activating, admitting, and discharging patients within the system. So the lack of candor was not reporting that he didn't have access to the system? Right. He failed to report to his direct supervisor, as he had a known requirement to do, that he lost access to the system. And the only way that his supervisors found out about that was because he told a colleague that he didn't have access to the system, and the colleague informed the supervisors. So is it correct that the government is not arguing, not relying at all on the fact that this was still the probationary period, but that the entire procedure is determined on the merits of the action, as if this was not a probationary employee? Well, this is a whistleblower retaliation action, and so the agency has an obligation, as in any retaliation action, to prove by clear and convincing evidence that it would have taken the disputed action. However, I think that the fact that he's a probationary employee does come into play for some things like what we've been discussing, whether or not the agency was limited to just relying on the lack of candor charge, or if they could present comprehensive evidence of Mr. Irwin's misconduct. I would also note that the administrative judge made a specific finding that the agency had demonstrated that it would have removed Mr. Irwin based on any one of the acts of misconduct. So even if the agency was limited to the lack of candor charge that AJ found, and we think that there is evidence for this, since there was a known duty to report information that he failed to report. Now, that's a long answer to a one-word question. Your response is, no, it's irrelevant that he was a probationary employee. Yes or no? The standard is the same, but... The standard is not the same. Well, the agency must show by clear and convincing evidence. If the standard applies whether or not a person is a probationary employee, we then ignore the prescriptions, the different views that I think precedent applies to probationary employees and the need for establishing detailed support, as we're discussing, as both of you, you and your friend, are discussing the merits of the removal, the grounds for the removal. And you're saying it's irrelevant that this was within the probationary year. I don't think it's irrelevant. I think that... Then what does it mean if it's not irrelevant? It means that Mr. Irwin had no right to notice and response. And so when he's challenging the evidence that the agency presented of his misconduct on the basis that he didn't have notice of it, that's simply an argument that he has no basis to make because he didn't have those due process rights. You're saying there are two issues. One is the whistleblowing. If he would have been fired anyway, in your view, that defeats the whistleblowing claim. But for anything else, he's out of court because he's probationary. Yes, a probationary employee has no right to directly challenge their removal. The only way they can get before the MSPB is in an IRA action like he filed. There's no right to challenge. But as a practical matter, applying those dueling principles in this case, the difference between his case and a non-probationer's case goes to whether or not we're constrained to look at what the agency said in the notice of removal or the termination letter, or whether we can go beyond that. That's fair, and I think that the court can go beyond it as the board did. And while Mr. Irwin did not have notice of the misconduct prior to his removal, he did have an opportunity to respond to each of the claims of misconduct during the administrative hearing. And the AJ credited the agency witnesses over him in each instance. If the court has no further questions, thank you. Thank you. OK, well, I mean, the Army argues that they would have terminated Mr. Irwin despite his whistleblowing activity. But again, that makes no sense in this case. Because he had one meeting with Major Larrillo on September 18th. He discussed the issue about CHCS. There were no further counseling sessions after that. Then almost two months later, he gets his report, which doesn't mention anything about any negative things that he's doing. He has a couple of, he should be going to more meetings. He should join some committee. But his ratings regarding patient care were good. And with regard to the due process issue, I mean, our position is that he should have at least been notified of the things that he was doing wrong. And he could be terminated for and give him a chance to respond to it. They never did that. They submitted that CPAC 25 on December 15th. But those relate to the fact that he's probationary. These are other issues, right? Other than whistleblowing. But Judge, I mean, I'd like you to point out that on the CPAC 25, it specifically says in number five and six, did you notify Mr. Irwin of the things that he did wrong? They said yes. When did he do it? September 18th, they said. The only thing that was discussed on September 18th was the CHCS issue. And it says also, was he given a chance to- Those aren't whistleblowing issues. They are right to appeal issues. And he doesn't have the right to raise those issues because he's probationary. Isn't that correct? Well, our position is that as a probationary, he's still entitled to notice of what he's doing wrong and a chance to defend himself. People that are not probation have a right to counsel and a right to a full hearing. Before that, you don't get those. But at least even the CPAC 25 says, did you notify him about what he did wrong? They said yes, they didn't. They filed the CPAC 25 on December 11th. He was not notified about any of these other issues that they were raising about his danger as a nurse. They let him stay on. They didn't counsel him. And then the very last moment that they had to terminate him, because his last duty was on February 6th, just before, because you don't have to go to the one year period, just before that, then they give him the termination letter. And they say lack of candor, which there was no lack of candor, because he didn't give a false statement. And therefore, our position is there's not clear and convincing evidence that they would have terminated him, except for the whistleblowing. Anything further? I vote approve. Thank you. We thank both sides and the case is submitted.